Stevens v. Howe.

---

EDWARD A. STEVENS ET AL. V. FRANK HOWE.

[FILED JANUARY 28, 1890.]

1. **Personal Injuries:** CONTRIBUTORY NEGLIGENCE: QUESTION OF FACT.   In an action for damages for injury to the person from the fall of a scaffold erected to lay the brick walls of a building by masons or laborers, *held*, that the contributory negligence of the injured party is a question for the jury to decide under the facts in evidence.

2. **The Instructions** of the court to the jury given and refused examined and considered, and *held*, rightly given and refused.

3. The Evidence examined and considered, and *held*, to sustain the verdict.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*Harwood, Ames & Kelly,* for plaintiffs in error, cited: *Randall v. B. & O. R. Co.,* 109 U. S., 478; *Armour v. Hahn,* 111 Id., 313; *Buckley v. Gould, etc., Mining Co.,* 14 Fed. Rep., 833; *Kelley v. Norcross,* 121 Mass., 508; *Mosely v. Chamberlain,* 18 Wis., 700\*; Deering on Negligence, sec. 205.

*C. M. Parker,* and *John P. Maule, contra,* cited: *Fones v. Phillips,* 39 Ark., 17; *Mitchell v. Robinson,* 80 Ind., 281; *Corcoran v. Holbrook,* 59 N. Y., 517; *Crispin v. Babbit,* 81 Id., 516; *Green v. Banta,* 48 N. Y. Super. Ct., 156; Deering on Negligence, secs. 204, 205; Wood, Master and Servant, sec. 438.

COBB, CH. J.

This is a proceeding in error from the district court of Lancaster county.

In the court below the plaintiff complained that the defendants were contractors and builders, in the city of Lincoln, Nebraska; that on the 28th day of August, 1886, the defendants were engaged in the erection of a two-story brick building on O street, in said city; that the walls of said building had reached a height of thirty-five feet above the ground, and about five feet above the second story; that the plaintiff was a brick mason, or bricklayer, and was employed by the defendants, with other bricklayers, for hire, to lay brick on said building, above described.

Second—It was the duty of the said defendants to oversee the work, and they had undertaken the general supervision thereof; that among other things they would

and did direct and prepare the scaffold, and see that the bricklayers were supplied with mortar and materials, and they would direct the bricklayers upon what scaffold to work.

That while the plaintiff was working upon the east side of said building, the defendants prepared and erected a scaffold at the northwest corner of said building, thirty-five feet above the ground, and had placed brick and mortar thereon, and then directed and ordered the plaintiff to go upon the same, to lay brick; that the plaintiff obeyed said order, and went upon said scaffold, and commenced laying brick, as directed.

The plaintiff further alleges that the defendants so negligently and carelessly erected, constructed, and prepared said scaffold that it was insufficient to sustain and bear the weight which the defendants placed thereon, consisting of brick and mortar, and placed there by and under the direction of the defendants, all of which it was the duty of said defendants to know, and which they could and might have known by the exercise of ordinary care, prudence, and caution.

That while the plaintiff was on said scaffold, engaged in laying brick under the order and direction of said defendants, said scaffold, by reason of the weak, insufficient, and careless manner in which it was constructed, as above alleged, broke, gave way, and fell, and precipitated the plaintiff to the ground, a distance of thirty-five feet; that as a result of said falling of said scaffold, and this plaintiff falling with the same, his right arm was broken, crushed, bruised, and mangled in such a manner that the same had to be and was amputated above the elbow.

The plaintiff further alleges, that by reason of said fall above described his right leg was badly fractured, sprained, and bruised, which has ever since caused him great pain, trouble, and expense, and as a result thereof said leg is permanently disabled.

Stevens v. Howe.

Plaintiff further alleges that by reason of his said injuries, as above described, he is forever unable and unfit to follow and labor at his said trade; that he could and did earn thereat the sum of four dollars and fifty cents ($4.50) per day; that at the time of the said accident he was thirty-six years of age, and that his ability to earn a living at laboring at his trade or any other manual labor for the remainder of his life is very much impaired, if not totally destroyed.

Plaintiff further alleges, that by reason of said injuries so received he was confined to his bed for the period of four weeks, and that he experienced great physical as well as mental suffering.

That by reason of said injuries, above described, he has been damaged to the amount of $10,000; that he was damaged by loss of time, so lost while confined to his bed, $108; expenses nursing, medical treatment, etc., $100; wherefore plaintiff demands judgment against said defendants for the sum of $10,208, his damages, and for costs of suit.

To this petition the defendants answered as follows:

The defendants, for answer to the plaintiff's petition, heretofore filed herein, admit the allegations made in the first paragraph of said petition, but deny that it was the duty of the said defendants to oversee the work mentioned in said petition, or that they had undertaken the general supervision thereof, but deny that, among other things, they erected and prepared the scaffold upon which the bricklayers employed upon said building worked, and supplied them with mortar and material therefor, and aver that the said plaintiff, and other bricklayers and co-employes with plaintiff, prepared and erected said scaffold, and also a scaffold at the northwest corner of said building, and placed brick and mortar thereon, and admit that plaintiff went upon said scaffold for the purpose of laying brick, under the defendants' employment. And these defendants deny

each and every allegation in said petition contained, except as hereinbefore expressly admitted, and aver that if said last mentioned scaffold was carelessly or negligently built, or made, it was the fault of said plaintiff and his said co-employes, and not of these defendants, and that the same was not constructed pursuant to any order or direction given by these defendants on their behalf, and, if negligently and unskillfully constructed, these defendants were ignorant thereof, and aver that it was the duty of the plaintiff to see that the scaffold was carefully and skillfully constructed, and of sufficient strength to support the persons and materials to be placed thereon, and that the same was not too heavily loaded, and that, if by any fault or negligence in any of these respects said scaffold gave way or fell, it was the fault or negligence of plaintiff, and not of these defendants, or either of them.

And these defendants, further answering, say that the said plaintiff's said supposed injury complained of in said petition, if any occurred, was not caused by and did not result from any wrong, fault, or negligence on the part of these defendants, or either of them, or of any person or persons in their employment, unless as above stated, but was caused by the wrongful, careless, and negligent conduct of the said plaintiff in leaping from said platform over the outer wall of said building, and consequently falling upon the ground, a distance of about twenty or thirty feet.

And these defendants further aver, that if the plaintiff had exercised ordinary care and prudence, no harm or injury would have resulted to him from the giving way and falling of the scaffold upon which he was at work as aforesaid, but that the said injury, if any occurred, was the result of the plaintiff's own careless, negligent, and improper conduct, as aforesaid.

Wherefore, the defendants pray to be dismissed hence, with their costs.

There was a trial to a jury with verdict for the plaint-

iff, in the court below, for $625. The defendants' motion for a new trial having been overruled, judgment was entered on the verdict, and the defendants bring the cause to this court on the following assignment of errors:

1. That the verdict is not sustained by sufficient evidence.

2. It is contrary to law and the evidence before the jury.

3. It is contrary to the law and the evidence, and should have been for the defendants.

4. It is contrary to the instructions of the court; No. 4 of its own motion, and of No. 8 asked by the defendants.

5. Error in giving instructions Nos. 2, 3, and 5 of its own motion.

6. In refusing to give Nos. 3, 5, and 6 asked by defendants.

The facts in this case, as they appear from the record, are, substantially, that the plaintiffs in error were, in August, 1886, contractors for the erection of a building on O street in this city. The defendant in error was a bricklayer, who, with several other bricklayers and laborers, was employed by the day by the contractors in the erection of the walls of the building. On the 28th of August, the walls of the first and second stories being completed, the workmen and the defendant in error were engaged in laying the walls of the third story, and were at a height of thirty-five feet above ground, and five above the second story joist. While the defendant was upon the scaffold, the beam-brace, or pudlock, as it is technically termed by witnesses, upon which the reverse end of the scaffold or platform rested, gave way, and by the weight of brick, mortar, and a workman thereon, fell downward, and forming a fulcrum of the beam at the center of the scaffolding, threw up the end suddenly on which the defendant was standing, precipitating him over the wall, and to the ground, breaking an arm, which was subsequently amputated, and permanently injuring a foot, and causing other permanent

injuries. A description of the scaffolding from the plaintiff in error's brief is believed to be substantially correct, as follows:

The testimony disclosed that the scaffold upon which the accident occurred was built along the side of the building, beginning at one end thereof, and was constructed in this manner:

The planks used to cover the platform, and upon which the brick and mortar were placed, and which served as standing room for the men, were fourteen to sixteen inches wide and from twenty-two to twenty-four feet in length. These were supported by what are called by the witnesses "jacks and pudlocks." The jacks are constructed by affixing two 2x4 or 2x6 studding upon a cross piece with braces, to serve as a pedestal, the studding being parallel with each other and a few inches apart, and perforated with holes through which iron pins are thrust for the support of the pudlocks. In the construction of the scaffold these jacks are placed at a distance of four and one-half to six feet from the brick wall, and pieces of 2x6 studding are placed between the upright studding of the jack, so that one end rests upon the iron pin and the other is supported by the wall of the building; these pieces are called "pudlocks." This arrangement is made at intervals along the wall, and then the planks constituting the platform are placed along parallel with the wall and across and resting upon the pudlocks. Each length of planks constituting the platform is called a "bent." The testimony is that the defendant in error was working on the north end of the north bent of this platform along the west side of the building, which at that time consisted of two bents, when the support at the south end of this bent, being in the middle of the entire platform, gave way, the south end of the planks, upon which he was standing, falling violently down under the weight of the material placed upon it, and throwing him over the wall, causing the injury complained of.

I will observe that the scaffolding here described is entirely that of the west side of the building, composed of two or more lengths of plank; but we have to deal only with the the northern lengths of the planks.

Upon most or all of the following facts there is a conflict of testimony. It is the theory of the plaintiff below that the fall of the scaffold and resultant injury were caused by the defective construction or material of the scaffold, or both. The defendants below invoke the doctrine expressed in the phrase "fellow-servants or co-employes," and contend that if there was a defect in the material, or the construction, of the scaffolding, it was caused by the negligence of the fellow-servants of the plaintiff, of which he took the risk when he engaged and continued in the employment of defendants.

The plaintiff testified on the trial that he had been engaged at masonry and bricklaying for twenty years and understood the rules and customs of the trade; that it was not the usual custom for bricklayers to have anything to do with the erection of the scaffolding, though he had, on some occasions, departed from that custom and assisted in the erection; that it was the nearly universal custom for the scaffold to be put up by laborers, under the supervision of the foreman of the work, or of the contractor, where no other foreman had charge. He testified that this scaffold which broke down was erected while he was at work on the east wall with his back towards the scaffold; that on the day of the casualty, about 1 P. M., he was directed by one of the contractors to go to work upon that scaffold and "start his lead," which he did.

He had on a previous cross-examination given a description of the usual manner of constructing scaffolds, but as it consisted largely of questions put by counsel, illustrated by books on a table, it is, without diagrams of the illustrations, hardly useful or intelligible. But from it all I make out that this scaffolding rested upon pudlocks,

most of which were 2x6 [inches], but one of which was 2x4, and that he observed this discrepancy upon going upon the platform, and that he said nothing about it.

It was the opinion of all the witnesses, and seems conceded, that a pudlock of sound lumber, free of knots, two by six inches, is safe, and sufficient for scaffolding of the kind; but it may be stated as the opinion of the witnesses that one only *two by four* is, *prima facie*, unsafe for its uses.

The witness further testified that up to the time of his injury Henry Stevens, one of the contractors, had the general management and supervision of the work; that no other foremen was employed; that it was their custom to look after their own work; that this scaffold was, to the best of his knowledge, put up by two laborers employed by defendants, Frank Cathers and Hiram White, and that defendants were there superintending its construction; that he could not say that he saw them do any work with their hands more than that of instructing the men, but they were there superintending the construction of the scaffold. In reply to the question, " You may state if you knew the scaffold was defective when you went upon it," under objections and exception he answered that he did not know that it was not sufficient to hold him or he should not have gone on it.

John G. Wright, a witness for plaintiff, testified that he had been engaged in laying brick since the year 1854; that on the day of the accident to plaintiff he was working on the walls of the building; that he saw the scaffold before the plaintiff went on it, and had gone down off the scaffold for a purpose and was returning when he saw a point under the joint of the planks of the scaffold which looked to be weak; that he spoke to a workman, telling him that he had better put in another pudlock before any one goes on there; that Edward Stevens was directing them in putting up more scaffolding, and that Henry Stevens had the supervision of the brick work, but that this Saturday he thought Ned

was the man there.    The witness also described the manner in which the scaffold was built, but as he seems to have exemplified his description largely by gesticulations it is not practicable to quote it.    He testified, however, "that Mr. Stevens was building them."

To the question, "What was the size of the pudlocks?" he answered, "I think two by six, except one under the joint, two by four"—that he would not swear it was two by four, but his recollection was that, for the reason that he had called attention to it.  This was a little while before plaintiff went upon it.  That he was not looking at the scaffold when it fell, but was facing the opposite way.   To the question, "State the appearance after you heard and observed the crash," he answered, "first I saw the plank going up. I judged from the appearance of Howe that he had turned round to take a trowel of mortar from the board and was passing to the north toward his work, and my recollection is that at the time he went over, the plank he had his foot on went up and turned him over towards the wall."

Q. Was anybody else on the scaffold?

A. Haass was near the point where the pudlock was.

Q. Did you see Howe fall?

A. I saw him go over the wall.

The remainder of the witness's testimony in chief was directed to the defendant in error's condition after his injury. On cross-examination he testified:

Q. Which one of the Stevens brothers was present that day.

A. Ned.    *    *    *

Q. Was the scaffold constructed to appear in a workmanlike manner?

A. There was nothing wrong with the scaffold that I know of except that weak point, weak pudlock.

Q. At that time had the scaffold been loaded with material, when you saw this weak point?

A. Yes. •

Q. What was the weakness; what trouble was there?

A. The pudlock there was two by four inches.

Q. Was there any great quantity of material piled up there which indicated that it was bad?

A. The scaffold was considerably well loaded with brick and mortar boards—with brick at least.

Q. If the pudlock had been two by six inches it would have been safe?

A. Yes, if it was a good sound two by six.

Hiram White, a witness for plaintiff, testified that he was employed by defendants in August, 1886, and had been wheeling brick on the day in question, "that they got in a hurry, the bricklayers having caught up with them; they commenced rushing business, and he was sent to help Frank Cathers put up the scaffold."

Q. Who sent you?

A. One of the Stevens. I had it in my mind that it was Harry, but don't know positively whether it was or not.

Q. What did he say to you?

A. To go and help Frank get the scaffold up; and I *got*.

Q. What did you do?

A. Helped to put the pudlocks in, and to put the boards on. We had substantially put in the pudlocks, and did not have enough to make them solid, and they were set up one at each end of the planks, and we put something on the two by fours to make them center.

Q. Who told you to do this?

A. Stevens.

Q. Was he there?

A. Right around the scaffold we were putting up, all the time.

Q. What did he say?

A. He told us to rush.

Q. What did you say to him about the scaffold being defective?

A. I don't know; after we got the center piece put in, and the two by sixes in the wall, the two by four was standing up, and we put an inch piece on the inside and nailed it on the center, on the inside of this standing up piece. I told him, and have forgotten the man who was putting mortar on there, I told him that was a pretty frail looking thing anyway to put that stuff up; he told me to hurry off there, and get the other up. We had two lengths up and were starting the third. I was standing on the second bent when it broke off, this thing nailed on busted off. Howe was standing on the end of the plank on the corner, and it threw him up about two feet, he went up and came down outside the wall. I saw him going, saw his hands out. I was on the incline going down, and jumped back on the other bent, not very far, for I was standing right on the end of the plank.

Q. Tell what the planks did on which Howe was standing.

A. The end towards me went down as the other end went up, and Howe went up, and went down on the other side.

Q. Which one of the defendants was it, if you know?

A. I thought it was Harry, but am not positive whether it was him or Ed. He had been there, as he had been bossing the job all along.

Q. Harry was there?

A. Yes, sir; I thought that was Harry. I was pretty sure when I came up here that Harry was the man, but I won't say whether he was or not—am not positive which one it was, but it was one or the other.

Q. Who had the supervision and control of the job?

A. Harry started it, I am pretty sure; he was there most, I think.

Q. Were they doing the bossing there?

A. They were; they bossed me anyway. I don't know whether Ed was bossing then, or not.

The most of the foregoing testimony tending to prove that the cause of the injury was an insufficient pudlock in the erection of the scaffolding was contradicted by that of the plaintiffs in error, and of Frank Cathers on their behalf. It may be observed, however, that their testimony suggests no other cause for the falling of the scaffold, or the injury to the defendant in error.

The evidence as to the superintendence and supervision of the work by the plaintiffs in error, or either of them, or the erection of the scaffolding which gave way, is somewhat conflicting, and in doubt; yet upon a view of all the testimony it was competent for the jury to find that the scaffold was erected under the immediate direction and orders of the plaintiffs in error, or one of them.

The plaintiffs in error complain of the refusal of the court below to give the third, fifth, and sixth instructions requested, as follows :

"III. That the plaintiff, in undertaking the labor and service in which he was engaged at the time of the accident, as a part of his employment took upon himself the risks ordinarily incident to such employment and assumed for himself any accident which results from the negligence on the part of other persons employed like himself in the same kind of service. If you shall therefore find that the injury was incurred by or through the negligence of a fellow-workman employed in the like service with him, then he cannot recover. (Refused, and excepted to by defendants.)

"V. That when several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the other, and can give notice of any misconduct, incapacity, or neglect of duty, and leave the service if the common employer will not take such precautions and employ such agents as the safety of the

whole party may require. If you shall find from the evidence that the plaintiff had the same opportunity as any other workman, or the defendants, to judge of the proper construction of the scaffolding or of the material used, and, notwithstanding this fact, that he still went upon the scaffolding and is injured, the injury in such case is one which the injured must bear himself. (Refused, and excepted to.)

" VI. That if the injury in such case was such an injury for which the law does not provide a remedy against the defendants, you are instructed to return a verdict for the defendants. (Refused, and excepted to.) "

The following instructions appear to have been given by the court of its own motion :

" I. That in August, 1886, the defendants were contractors erecting a building on O street, and the plaintiff was a brick mason employed by defendants on the building; that while the plaintiff was at work the defendants had built a scaffold upon the west wall and ordered the plaintiff to go to work thereon ; that defendant carelessly erected, constructed and prepared said scaffold, and that it was insufficient for the purpose for which it was built, which defendants could and might have known by the exercise of ordinary care and prudence; that while plaintiff was laboring upon said scaffold, the scaffold broke and the plaintiff was thrown over the wall and injured by the breaking of his arm and leg; that by reason thereof, by loss of time, incapacity to labor, expenses incurred and pain endured, plaintiff has been damaged in the sum of $14,208."

The defendants in their answer admit being contractors, engaged in the construction of a building and of employing the plaintiff. Defendants deny that they built the scaffold, but allege that the plaintiff and other co-employes built said scaffold, and if the same was carelessly and negligently built, it was the fault of the plaintiff and their co-employes and not the defendants, and the same was not constructed under any direction of the defendants, and if so

built, defendants were ignorant of the fact; that plaintiff, by the exercise of ordinary care and prudence, could have avoided any injury, and that the injury was the result of the plaintiff's own careless, negligent, and improper conduct; and defendants deny each and every allegation of the petition, except as above admitted.

The reply to the answer is a general denial.

"II. The burden of the proof is upon the plaintiff, of every material allegation of his petition by a preponderance of the evidence. The gist of this action is the alleged negligence of the defendants in the construction of the scaffold, and upon your finding upon the question of negligence this case will depend.

"III. If you find from the evidence that the defendants, or either of them, constructed the scaffold, or knew of the manner in which it was constructed, and you further find that the scaffold was constructed in a careless and negligent manner, so as to render the same unsafe by reason of the carelessness of construction, or apparent weakness of the material employed, and that the plaintiff was not guilty of negligence on his part, your verdict should be for the plaintiff.

"IV. If you find from the evidence that the defendants, nor either of them, constructed, nor aided in the construction of the scaffold, nor knew of the manner in which it was constructed before the injury, but that the scaffold was constructed by some co-employes of the plaintiff, and that the defendants employed competent men, who built the scaffold and furnished proper and safe material for the same, then the plaintiff cannot recover and your verdict should be for the defendants.

"V. If you find for the plaintiff, you should allow such compensation as to you, under the evidence, shall seem proper for the loss of arm and other injuries proven, if any, taking into account the decrease in plaintiff's ability to earn money, his loss of time, his expenses incurred by reason of

36

the injury, his pain and suffering, his expectancy of life, and allow such sum as would compensate the plaintiff for the injury, but you should not allow vindictive or punitive damages. If on the other hand you find for the defendants, your verdict should be simply a general finding for the defendants."

The following were given on the motion of defendants :

"I. The jury are instructed that the plaintiff must recover, if at all, upon proof which by preponderance of the evidence satisfies them that the allegations of the petition are true as to the manner in which he received his injury. The charge is that of negligence against the defendants. It is not enough for the plaintiff to show that he has sustained an injury, but must show in addition that the injury resulted by and through the negligence of the defendants in and about the erection and construction of the scaffolding, and that he himself had not done any act not to be done, nor omitted any which should have been performed which contributed in any way to the happening of the accident.

"II. The fact that plaintiff is injured is only one of a series of facts to be established by a preponderance of the proof. The petition charges the defendants with negligence. In determining whether or not the defendants have been guilty of negligence, you are to consider the business in which they were at the time engaged, and that of the plaintiff, and the circumstances under which the parties at the time were acting. If you shall believe from the evidence that the defendants were contractors and builders, who had charge of the erection of the building at the time and place mentioned in the petition, and that the plaintiff was one of the bricklayers and builders engaged by them and in their service, and if you shall further believe from the evidence that the plaintiff was at the time a man skilled in his business and of many years' experience, and familiar with the ordinary methods of constructing and working upon and about scaffolding, and if you shall

further find from the evidence that at that time the defendants had employed one Frank Cathers to build and construct the scaffolding for the use of the bricklayers and masons at work upon the building, and that said scaffold builder was a competent person, and had been engaged as such in company with the plaintiff and the other workmen upon the building, then in such case the scaffold builder was a fellow-workman of the plaintiff within the meaning of the law, for whose neglect in the line of his duty defendants would not be liable to plaintiff, unless you believe from the evidence that the defendants themselves had directed such scaffold builder to perform the act from which the injury had resulted, and had directed the plaintiff to go upon the scaffold with notice to them of such defect therein, unless you further believe that the materials furnished by the defendants were not reasonably safe, or unless the defendants then knew that the materials by them so furnished for such use were insufficient and unsafe.

" IV. That the defendants were bound to use ordinary care in providing suitable materials and proper persons to perform the work in which the plaintiff was at that time engaged; and if you shall believe from the evidence that the defendants had provided reasonably safe and suitable material for the building of scaffolding, and a reasonably prudent and competent person to construct such scaffolding, then the defendants would not be liable if through neglect or oversight of the scaffold builder such scaffold was in fact insufficiently constructed; but you will examine the evidence with reference to whether the fault in the scaffolding was one growing out of insufficient material or insufficient workmanship. If you shall find from the evidence that the injury resulted from the breaking of one of the pudlocks, then you will ascertain from the evidence whether or not the pudlock in question was one such as was usually and ordinarily used in and about such work,

and if it was, the defendants would not be liable because of its breakage, unless they had notice and knowledge of some defect therein. If it was apparently of good material and of the usual kind used in such work, then they are not liable, although through some unknown reason the same might have broken; and in such case, upon such finding, your verdict should be for the defendants.

"VIII. That if you are satisfied that the plaintiff, before going upon the scaffolding, observed that one of the braces, or, in the language of the witnesses, *pudlocks*, was a two by four when it should have been a two by six, and that in his judgment at that time a two by four was insufficient, and, notwithstanding such knowledge and impression, the plaintiff nevertheless went upon the scaffold, and that the said brace or pudlock broke in consequence of its insufficiency for the purposes intended, that in such case the plaintiff took the risk, with full knowledge, into his own hands, he cannot recover, and your verdict should be for the defendants."

Considering these instructions with each other as a whole it appears to me that the jury were sufficiently and properly instructed upon the issues of fact, and the law of the case. I speak specially in reference to the point to which the plaintiffs in error cite authorities to the proposition that if the injury was caused by the negligent or unskillful conduct of any of the other men employed as bricklayers or laborers on the building, then, being co-employes of the defendant in error, injury, through their unskillful or negligent conduct on the work, was one of the risks and perils of life necessarily incident to the trade and service in which he was employed, and the consequences of which .he must bear alone. Eliminating the qualifying word "unskillful" from the proposition, and, as I believe, it fairly states the law applicable to one view of the evidence in the case, and this view is sufficiently met in the fourth instruction of the court of its own motion, I will add that sufficient

facts to bring the case within that instruction were testified to by the defendants and the witness Cathers. But if, on the other hand, one or both defendants as contractors were usually present at the work, superintending and directing the masons and laborers, and the manner and use of material in the construction of the scaffolding, and actually gave directions and superintended the defective scaffold, and personally directed the injured party to go upon it and follow his work, then the question of "co-employes" becomes foreign and inapplicable. It then becomes the defendants' own negligence which caused the injury (if in the opinion of the jury it was caused by a defective scaffold), and for the negligence of one employe another takes no risk.

This view was, as I conceive, fairly presented by the court in its instruction. The doctrine of contributory negligence was presented to the jury in the eighth instruction on request of defendants, and being thus submitted, the question whether the party complaining was guilty or not of contributory negligence was one to be left to the jury. (*Orleans Village v. Perry*, 24 Neb., 831.)

As to the eighth instruction, I will observe that it goes as far, when applied to the evidence in the case, as it was prudent for the court to instruct in favor of the plaintiffs in error.

It will be conceded that the primary cause of injury is not very clearly located by the testimony. It is certain that it was the result of the giving away of the support and the falling of the scaffold, causing the injured party to be thrown over the wall, and to fall from a height of thirty-five feet.

Whatever contributed to the insufficiency of the support and caused it to give way was the undoubted cause of the injury. There is evidence tending to prove that the scaffold at the point of weak support was overloaded; but there is no testimony tending to prove that the weight was

sufficient to· break down a scaffold of that kind·if properly constructed of proper material. There is further evidence that the scaffold was not constructed in the usual, workmanlike manner, of material of proper strength and dimensions required for the purpose. This evidence being before the jury, and, as we have seen, submitted to their consideration by careful instructions from the court, it is believed that no sufficient objections to the finding and verdict of the jury have been shown.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.