LILLIAN E. GUNDY, ADMINISTRATRIX, APPELLEE, V. NYE-SCHNEIDER-FOWLER COMPANY, APPELLANT.

FILED JUNE 13, 1911.  No. 16,189.

1. Master and Servant: DUTIES OF MASTER: QUESTIONS FOR JURY. It is the duty of an employer to furnish his employee a safe place in which to work, and to inform him of all latent dangers connected with the employment. If the inquiry whether the employer has performed his duty in this regard so as to be free from negligence on his part depends upon facts and conditions to be ascertained from conflicting evidence, its determination is for the jury under proper instructions.

2. Pleading: AMENDMENT: PREJUDICE: PRESUMPTIONS. If a party is allowed to amend his pleadings at the trial, it should be upon such terms as are reasonable and will avoid prejudice to the opposite party. Prejudice from such amendment will not be presumed. It must be made to appear.

3. Witnesses: CROSS-EXAMINATION: WRITINGS. It is ordinarily improper to introduce writings in evidence as a part of the cross-examination of a witness. It may under some circumstances become necessary to do so, and the matter is generally within the sound discretion of the trial court.

4. ———: IMPEACHMENT: WRITINGS. If a witness upon cross-examination identifies a letter as written by himself which contains statements tending to contradict or explain his evidence in chief, the latter is competent as impeaching evidence.

5. Death: MEASURE OF DAMAGES: EVIDENCE: HARMLESS ERROR. In an action by an administratrix to recover damages for causing the death of her husband, the measure of damages is her loss from a pecuniary standpoint by the death of her husband. Whether

she was left in poverty or with ample means is immaterial. In such action the plaintiff was allowed to testify that she had no other means of support than the earnings of her husband. The petition contains such an allegation, which was not objected to. The evidence was given in connection with her testimony as to the amount of such earnings, and the jury were correctly instructed as to the measure of damages. *Held.* That it does not appear that the defendant was prejudiced by this evidence so as to require a reversal of the judgment.

6. Trial: ACTION FOR DEATH: DAMAGES: INSTRUCTIONS. An instruction in such case that the jury "should allow such amount as will compensate plaintiff for such support and maintenance as they find from the evidence she *should* have received from" the deceased, together with the further instruction that the plaintiff would be entitled to recover "such damages as would compensate her for the injury that you may believe from the evidence she has sustained by reason of such death," will not be presumed to have been understood by the jury to mean that she could recover the amount of support and maintenance that she ought to have. The meaning, when considered in the light of the statement of the case and the other instructions, is that the verdict should compensate her for the loss, caused by the death of her husband, of such support and maintenance as she would have received from him if he had lived. The giving of this instruction is not reversible error; the defendant not having requested any more complete statement upon this point.

APPEAL from the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Edgar M. Morsman, Jr.,* and *Courtright & Sidner,* for appellant.

*C. E. Abbott, contra.*

SEDGWICK, J.

The plaintiff's husband, Melvin R. Gundy, was employed as a carpenter in building an elevator for the defendant. While so employed he fell and was instantly killed, and the plaintiff, as administratrix of his estate, brought this action in the district court for Dodge county, and ob-

tained a verdict and judgment for damages caused by his death. The defendant has appealed.

The principal question presented by the defendant is as to the sufficiency of the evidence to support the verdict. The answer was a general denial of negligence on the part of the defendant which was the proximate cause of the accident, and the allegation that the accident was caused by Mr. Gundy's own negligence and the negligence of a fellow servant, with the plea of assumption of risk. The elevator that was being constructed was 68 by 100 feet on the ground. It was divided into about 70 bins of various sizes. The bin in which the accident happened was 12 by 14 feet. The walls and partitions of the elevator were constructed by laying two-inch planks, one above the other, and spiking them securely together. At the foundation these planks were 8 inches in width, and so continued to about the height of 19 feet. They were then reduced to 6 inches in width, which continued through about 30 feet more of the elevation. After that 2 by 4's were continued for the partition wall. When the accident happened they were finishing these walls and partitions, and had reached about the height of 65 feet. In working on the walls and partitions the men stood upon stagings, which were raised from time to time as the work progressed. There were three of these for each bin of the size of the one in which the accident happened, and they appear to have been prepared at the time the building was begun. They were each a little less than four feet wide and a litle less than 14 feet in length. They were constructed of two-inch planks with three 2 by 4's securely spiked across them, and on the other side of the 2 by 4's dressed boards were securely nailed. A bracket was fastened with spikes in each corner of the bin as a support for these stagings, and two corners of each of the outside stagings rested upon these two brackets. The other corners of the outside stagings and the four corners of the inner staging were supported by lugs securely fastened in the partitions. These lugs were made of 2 by 8 timbers, 20 or 22 inches in length,

and were placed crosswise, with the center resting upon the center of the partition, and the corners of the stagings rested upon the ends of these lugs. There were about 70 men employed in building these walls and partitions, and they appear to have assisted each other, if necessary, so that the building would progress in height uniformly. When the walls and partitions were built about four feet above the stagings, the brackets and lugs were placed and secured, and the stagings were raised and placed upon them. Mr. Gundy was assisting in raising these stagings when the accident happened. In doing this five men worked together; one of them fastened a rope to each corner of the staging to be raised, and passed a rope to each of the four men standing above, one being at each corner of the staging to be raised. The staging was raised by these ropes and placed upon the brackets and lugs. They had raised and placed one of these stagings at the side of the bin, and had raised the center staging nearly to its place, when Mr. Gundy fell with the side staging which had already been placed. Mr. Gundy was standing at the corner of the staging which they were raising nearest to the one which had already been placed. In the adjoining bin the staging had already been raised, and appears to have kept its position. The jury might reasonably conclude that, if this staging which these men had placed had been secure, the accident would not have happened. The inquiry was: Would this staging have fallen if all parties interested had acted with reasonable care and caution; and, if not, was it the negligence of Mr. Gundy, or the negligence of his fellow servant or the negligence of the defendant that caused the accident? And, if the conclusion is that the accident is not to be attributed to the negligence of any one, did Mr. Gundy assume the risk as a necessary risk of the employment? Mr. Gundy was about 45 years of age. He had worked at the carpenter trade principally, but not entirely, for 10 or 12 years. He had never worked upon a grain elevator before, and the evidence does not show that he had ever been employed upon a large or high

building. He had been working about this elevator for perhaps two weeks. Most of this time he had been working on the ground preparing wedges with which to secure these stagings in position. For five or six days he had helped on these bins. He had worked upon no particular bin and with no particular set of men, but had been sent from place to place as his help might be needed. Mr. Couch, his immediate foreman, testified that he thought this was the first time Mr. Gundy had assisted in raising these stagings. The manner of securing these stagings in position was left entirely to the men. The same stagings were used in each bin throughout the progress of the work. They were not quite as large as the bins in the beginning. There was room between the stagings and the partitions to enable them to remove the brackets and saw off the lugs after the stagings had been placed upon the higher brackets and lugs. As they progressed through the work and laid narrower walls and partitions, there was still more room for the staging. The sides of the partitions were not always kept in a true perpendicular line. When this was discovered by the superintendent it was corrected, but the result was that in places this added still more to the size of the bins. While the evidence is not certain upon this point, the jury might reasonably have found that the staging which fell with Mr. Gundy slipped off of the side of the lug because there was too much room between the lug and the wall of the bin. The evidence is also uncertain as to who placed this lug and as to whether it was in the right position. There was apparently reliable evidence, if not a preponderance of the evidence, from which the jury might have found that Mr. Gundy, while helping to raise this staging at the time of the accident, was standing upon the partition wall between the bin in which he was working and the one immediately north, and, to prevent losing his balance because of the moving of the heavy staging that they were lifting, he placed his foot upon the corner of the staging which they had just put in place, which gave way under him and caused his fall. The superin-

tendent and foreman testify that they frequently warned these men to be careful and place their staging securely. The jury may have considered this a very proper, and perhaps necessary, thing to do, even with experts, who had been with the work from the foundation and had learned how to protect themselves before the building had reached such a height as to greatly increase the danger; but there is no evidence that any such general instructions had been given after Mr. Gundy commenced working in these bins. The stagings in the various bins were raised simultaneously, and when the foreman directed the men to raise the staging at this particular time he told them in a general way to make the staging secure because they had reached the top of the building and this was the last raising, but there is no evidence that these directions were given in the presence of Mr. Gundy or that he had any knowledge of such instructions. It does not appear that these directions had any reference to their manner of raising them or to the safety of the men in so doing. There is no evidence that Mr. Gundy had received any instructions in regard to the manner of doing this work or in regard to the danger connected with it. The foreman testified that Mr. Gundy had no such instructions so far as he knew.

The burden of proof was upon the defendant to show that Mr. Gundy was guilty of negligence that was the proximate cause of the accident. The jury have found that the evidence does not establish these defenses, and the evidence is not of such a nature as to require us to interfere with their finding. Was there negligence on the part of the defendant that was the proximate cause of the accident? The burden was upon the plaintiff to establish this negligence. Is the evidence sufficient to support such a finding? The evidence shows beyond a question that the stagings were suitable and were properly constructed, and there is no defect in the materials or appliances furnished by the defendant. Could defendant by prescribing a uniform method of raising and securing these stagings prevent such accidents? Were the conditions of

the work such as to require defendant to exercise greater care in securing the safety of the men? Was it the defendant's duty to know whether Mr. Gundy had had any experience in this sort of work, and whether he understood and appreciated the dangers connected with it? Were the persons in charge of this work entirely justifiable in sending him to the top of this structure to perform such duties? Should they under such circumstances see to it that he understood the nature of the work and the proper means of insuring his safety? To determine these and similar questions which are suggested by the circumstances recited, and many considerations to be derived from the evidence, is a complicated and difficult duty. These are not questions of law, but are to be determined by the jury, and, if properly submitted, this court cannot interfere with the verdict.

If the negligence of a fellow servant was the proximate cause of the accident, the plaintiff cannot recover. One of the men who had been in this part of the work from the beginning was helping to raise the staging when the accident occurred. He understood the work, and some of his evidence indicates that he was directing Mr. Gundy. Whether his negligence was the proximate cause of the accident is also a question of fact to be determined from a consideration of all of the conditions and surrounding circumstances. The evidence is not so clear and free from conflict upon these issues as to permit the court to dispense with the assistance of the jury and determine the case upon questions of law.

The defendant complains that the plaintiff was allowed to amend her petition before proceeding to the trial of the case. The petition was quite comprehensive, and stated the plaintiff's cause of action and the facts supposed to constitute the negligence of the defendant with great particularity. The change made in the petition by the amendment was in reality a material modification of the theory upon which the action was begun. It was possible that the change might seriously prejudice the defense, but these

considerations do not furnish ground to refuse to allow amendments under the liberal provisions of the code. Such amendments should be allowed under such terms as are reasonable and will prevent any unfair advantage to the party making the amendment. The defendant, however, made no showing of prejudice by this amendment, and did not ask for any delay in the proceedings or for any other relief that the court might grant. There was no action of the court that could be considered erroneous.

Mr. Miller was one of the men engaged with Mr. Gundy in raising the staging at the time of the accident. He was called as a witness by the defendant, and testified to certain matters very prejudicial to the plaintiff's case. Upon his cross-examination, he was asked if he had written a letter to the plaintiff's attorney in regard to the circumstances of the accident, and answered that he did not remember of doing so. He was then shown a letter purporting to be signed by him and addressed to the plaintiff's attorney, in which, among other things, he said: "I know all about it, and no one can give you the evidence I can. * * * It will pay you to come and bring her (the plaintiff) with you, or let her come alone and I will tell her all. I think you have a case." He then admitted that he wrote and mailed the letter. The plaintiff then offered this letter in evidence, which was objected to on the ground that it was not proper in cross-examination, and that it was incompetent and immaterial. The objection was overruled and the letter received in evidence. In this it is now insisted that the court erred. It is perhaps not usual to receive such documents in evidence during the cross-examination. However, under some circumstances this might be necessary, and the matter is generally considered to rest in the sound discretion of the trial court.

The principal objection to this evidence is that the letter does not contain any direct allegation of fact inconsistent with the evidence of the witness. The witness had testified that Mr. Gundy at the time of the accident was standing upon the lug upon which they were trying to

place the staging, which they were raising, in a very inse-
cure and apparently dangerous position. In this he was
contradicted by other witnesses, and his evidence upon this
point, if true, was quite material as bearing upon the neg-
ligence of Mr. Gundy. The statement in the letter that
he knew all about the facts, and that the plaintiff had a
case, might reasonably be regarded as inconsistent with
his evidence. In this view of the matter, we think the
court might in its discretion allow the letter in evidence.

The plaintiff was allowed to testify that she had no
other means of support than the earnings of her husband.
This allegation was in the petition, and was not objected
to by the defendant, but the defendant objected to allow-
ing her to so testify, and now insists that the ruling was
erroneous. It is said that the purpose was to show that
the plaintiff was left destitute, and so arouse the sym-
pathies of the jury. Of course, it was immaterial in this
case whether the plaintiff was left in poverty or with
ample means. The question was how much she had lost
from a pecuniary standpoint by the death of her husband.
It was proper to show what Mr. Gundy's earnings had
been, and the manner in which he had supported his fam-
ily. Under the instructions upon this point given to the
jury by the court, it seems improbable that the jury should
regard this evidence of importance except as tending to
show that the earnings of Mr. Gundy were sufficient for
the entire support of his family.

It is objected that the court improperly instructed the
jury as to the measure of damages. In one instruction the
court told the jury: "In determining such question, the
jury should allow such amount as will compensate plain-
tiff for such support and maintenance as they find from
the evidence she should have received from the said Mal-
vin R. Gundy during his expectancy of life, not exceeding
the sum of $5,000," and in the next instruction, "In such
case the plaintiff would be entitled to recover such dam-
ages as would compensate her for the injury that you may
believe from the evidence she has sustained by reason of

such death, which you should ascertain according to the evidence and rules laid down in these instructions." The defendant contends that the effect of these instructions is that "the measure of damages was the amount of her support and maintenance during the entire expectancy of her husband's life." We think that these two instructions, taken together, state the rule to be that the plaintiff should recover such damages as would compensate her for the injury, which would be compensation for the loss of the support and maintenance that she would have received from her husband, not such support and maintenance as she ought to have received. The language of the two instructions, when taken together, will not justify giving that meaning to the word "should" in the thirteenth instruction. The instructions, therefore, upon this point were not necessarily erroneous; and, if they were not as full and complete as desired, the defendant is not in a position now to complain, since it offered no instructions upon this point. There are no other objections to the instructions. The case appears to have been fairly and carefully tried.

The judgment of the district court is

AFFIRMED.

LETTON, J., dissenting.

Under the evidence in this case, I can see no legal reason for holding the employer liable. The opinion says: "The evidence shows beyond a question that the stagings were suitable and were properly constructed, and there is no defect in the materials or appliances furnished by the defendant." These stagings were to be placed upon projecting lugs put in position in the wall by the men themselves. The plank furnished for the lugs was proper, suitable, and not defective. The evidence is undisputed that one of the lugs was set a little too far from the corner of the building by another carpenter—a fellow servant—and the corner of the platform which should have rested on it went down when Gundy stepped upon it.

The general rule as to scaffolds in other jurisdictions, and in this state until this time (*Stevens v. Howe*, 28 Neb. 547), is that, "where the servant as part of his work is to construct a scaffold or other structure out of materials furnished by the employer, and the employer furnishes proper materials for that purpose, but the servant, by negligence either in putting the materials together or in selecting them, erects an unsafe appliance which results in injury to another servant, no negligence can be imputed to the master and he is not liable for the injury. In such cases the master's responsibility ends with the selection of suitable material and suitable men for the work." 20 Am. & Eng. Ency. Law (2d ed.) 82. 2 Labatt, Master and Servant, sec. 614; *Leishman v. Union Iron Works*, 148 Cal 274, 3 L. R. A. n. s. 500, and note.

The placing of lugs and the raising of the staging were performed by the carpenters as a part of their regular duties. Each carpenter assumed the ordinary risks of the business, among which was the carelessness of his fellow servant. Under the undisputed facts, the accident was not the result of any negligence on the part of the master, and as the law stood at that time no liability existed on his part. Since this occurrence the legislature, recognizing and realizing the unsatisfactory condition of the existing law, in the exercise of the police power, has wisely taken steps to protect workmen on such structures by the enactment of a law requiring safeguards. It is to be regretted that the act was not in force when this accident occurred. As the law then stood the employer was not liable.

BARNES and ROOT, JJ., concur in this dissenting opinion.