[No. 26599.   Department One.   August 30, 1937.]

LOUIS CLAUSEN *et al., Respondents,* v. W. W. JONES *et al., Appellants.*[1]

[1]Reported in 71 P. (2d) 362.

*Hamblen, Gilbert & Brooke,* for appellants.

*Lloyd E. Gandy* and *Patrick H. Walker,* for respondents.

MAIN, J.—These two actions were consolidated for trial in the superior court. In each, damage was sought for personal injuries growing out of a collision between a team and wagon driven by the plaintiffs and an automobile driven by the defendant W. W. Jones, who will be referred to as though he were the only party defendant. The trial resulted in two verdicts, each in the sum of twelve hundred and fifty dollars. The defendant moved for judgment notwithstanding the verdicts and also for a new trial, both of which motions were overruled. From the judgments entered upon the verdicts, the defendant appeals.

The accident which gave rise to the judgments happened November 5, 1935, at about 5:15 p. m., on Nevada avenue, in the city of Spokane, and about half way between two intersecting streets, at each of which

intersections was a street light. Nevada avenue is forty feet between curbs, with a paved strip in the center twenty feet wide. On either side of the paving is gravel which is fit to be used by vehicles.

The respondents were proceeding north on Nevada avenue, which is an arterial highway, in a wagon drawn by two horses, and, as they say, the horse on the right-hand side and the two right-hand wheels of the wagon were off the pavement on the east side. The appellant, going in the same direction, approached the wagon, the automobile striking the rear of the wagon, breaking one leg of each of the respondents and causing them some other injuries.

■ With reference to the motion for judgment notwithstanding the verdict, little need be said. The evidence, which the jury had a right to believe, shows that the respondents had a lighted lantern, hung to a two by four standard, on the left side of the wagon, which could be seen by anyone approaching from the rear or in the opposite direction. There was a street light, as already pointed out, at a cross street next beyond where the accident happened, and at the cross street back of where it happened. The atmospheric condition was not such as to obscure the vision of the headlights of the appellant's automobile. There can be no question but that the jury were justified in finding the appellant negligent under the evidence.

■ There is a contention that the respondents were guilty of contributory negligence, but, on the question of the light at the side of the wagon, while the evidence was in conflict to some extent, the question, as already indicated, was for the jury.

It is said, however, that the respondents were guilty of contributory negligence because they were not driving near the curb on the right-hand side of the street. There was an ordinance of the city which provided

that a vehicle, except when passing another vehicle going in the same direction, "shall keep to the right of the center of the street and as near the right-hand curb as practicable." The appellant says that, under this ordinance, it was the duty of the respondents to drive on the gravel, and not on the pavement, and as near the curb on the right-hand side as practicable.

There is nothing in the ordinance which makes any distinction between a horse-drawn and a motor-driven vehicle. If it were the duty of the respondents to drive near the curb on the right-hand side and on the gravel, under the ordinance, it was likewise the duty of the appellant. If this construction be given the ordinance, then the pavement in the center would be a useless thing. Such a construction would have in it no element of reason. The court properly denied the motion for judgment notwithstanding the verdict.

Coming now to the motion for new trial, the first question to be considered is whether the trial court erred in refusing to permit the introduction in evidence of a report, made by two policemen to their superior officer four or five hours after the accident. Two officers, soon after the accident occurred, went to the scene thereof, interviewed such persons as they could, looked over the situation, and wrote out their report. The appellant, while one of the officers was testifying under cross-examination, offered the report in evidence, which, as stated, was rejected. There was no error in this ruling.

The report contains much that is hearsay as well as immaterial. The officer did not testify to anything while under examination on the witness stand which would justify the introduction of the report or any part of it for impeachment purposes. Whether such a report should be introduced in evidence, is a matter which rests in the sound discretion of the trial court.

70 C. J. 687, § 839; *United Iron Works v. L. J. Smith Construction Co.*, 116 Kan. 482, 227 Pac. 369; *Gundy v. Nye-Schneider-Fowler Co.*, 89 Neb. 599, 131 N. W. 964.

This case differs from that of *State v. Whitelaw*, 163 Wash. 347, 1 P. (2d) 212, where it was held that a written confession of a defense witness could be introduced to impeach the testimony given by that witness upon the stand. There was no error in rejecting the report.

■ The more serious question in the case is whether the trial court erred in permitting the doctor who attended the respondents after their injuries to use, while testifying upon the trial, a typewritten statement of his office day book or record in which he recorded the calls that he had made upon the respondents before they were able to come to his office for treatment and the calls that they made at the office. In this day book or record were kept matters covering other patients who called on the same days. The calls extended over a period of several months and, in all, amounted to something over thirty. The doctor testified to the correctness of the copy which he was using to refresh his recollection. Over objection, he was permitted to use the same. The only reason that the day book or daily record was not brought in was because it contained information about the doctor's other patients which was confidential.

The rule is that a record which the witness uses, when testifying, to refresh his recollection, must be the original record, if that is procurable. In 2 Wigmore on Evidence (2d ed.), § 749, it is said:

"In short, *the original record itself must be used in testifying, if it is procurable.*

"This rule (which merely applies the general principle of § 1179, *post*) is almost universally recognized; and, of course (as a part of the rule), if the original

is lost or otherwise unavailable, a copy may then be used."

In 70 C. J. 593, the rule is stated to the same effect, and in the notes are cited a large number of cases which support it. Even though the daily report or record contained confidential matters, this did not prevent its use, because such matters could have been sealed up or covered over, and confidential matters would not have been disclosed.

In 28 R. C. L. 421, referring to private books and papers, it is said:

"Of course, the court may allow a witness who has been ordered to produce his private books and papers to seal up or cover those portions not relevant to the controversy, so as to protect their privacy."

Under the rule stated, it was error for the trial court to permit the doctor to use the typewritten copy to refresh his memory and not require the production of the original record; and this error was of a character which requires the reversal of the judgment.

In passing, it may be said that we do not question the correctness of the typewritten copy in any particular. But this is not the question. If a witness can testify from a typewritten copy when the original is available, it would open the door to manufactured testimony which the opposite party would have no means of meeting or combatting. In the interest of the administration of justice, the rule, as stated by Wigmore, in our opinion, should not be departed from.

Each of the judgments will be reversed, and the causes remanded to the superior court with direction that a new trial be granted.

STEINERT, C. J., GERAGHTY, MILLARD, and BLAKE, JJ., concur.