DWAYNE D. ANDERSON, BY ALVA H. ANDERSON, HIS FATHER AND NEXT FRIEND, APPELLEE, V. LLOYD L. EVANS ET AL., APPELLANTS.

83 N. W. 2d 59

Filed May 10, 1957. No. 34147.

*Max Kier* and *Charles Ledwith,* for appellants.

*Eisenstatt, Seminara & Lay* and *Julius D. Cronin,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in two causes of action for damages for personal injuries and for medical and hospital expenses instituted by Dwayne D. Anderson, a minor, by Alva H. Anderson, his father and next friend, plaintiff and appellee, against Lloyd L. Evans and Edrie Evans, defendants and appellants. The defendants are husband and wife but their liabilities, if any, in this action are not dependent upon the marriage relation but upon an alleged contract of employment whereby the defendants were bound as partners or persons engaged in a joint adventure.

The action was tried to a jury. A verdict was returned in favor of plaintiff and against the defendants for $10,000 upon which verdict judgment was rendered. The defendants separately filed motions for judgment notwithstanding the verdict or in the alternative for a new trial. These were overruled, whereupon the

defendants perfected an appeal to this court wherein they seek reversal of the action of the district court.

An understanding of the matters presented here for consideration requires an outline of the pertinent matters presented by the pleadings and the evidence.

By the petition it is alleged that plaintiff, a minor of the age of 18 years, was on August 5, 1953, employed by the defendants under an oral contract of employment to work on defendants' ranch as a ranch hand; that his employment commenced on August 6, 1953; that on that day plaintiff assisted the defendant Lloyd L. Evans, who will be hereinafter referred to as Lloyd, in removing a stake from a point near the rear end of a pick-up truck; that prior thereto Lloyd had poured fuel on the stake which he had ignited; that he knew of the high explosive and dangerous qualities of the fuel but failed to inform the plaintiff who because of youth and inexperience did not know of these qualities; that Lloyd directed plaintiff and commanded the plaintiff to pour additional oil on the stake; and that in an attempt to comply plaintiff picked up a can of fuel, in consequence of which the can of fuel exploded and plaintiff was severely burned and injured. He alleged in numerous specifications that Lloyd was negligent. A sufficient summary of the specifications is that he was negligent in commanding and directing the plaintiff to pour fuel on the burning stake the hazard and danger of which was known to Lloyd or should have been known to him but which on account of his age and inexperience was unknown to the plaintiff.

By answer the oral contract of employment by plaintiff with Lloyd was admitted but as to the defendant Edrie Evans, who will hereinafter be referred to as Edrie, the contract was denied. The original application of fuel to the stake and that it was lighted was admitted. It was in substance admitted that the fuel had inflammable and explosive qualities which entailed danger when used as was done by plaintiff when the

explosion of which plaintiff complains came about. It was denied that the application was made at any request or direction of Lloyd but that it was done contrary to his express direction and without his knowledge. It was alleged that by reason of age and experience the plaintiff was aware and informed of the dangers incident to the use of the fuel in the manner in which he used it, and in consequence thereof he assumed the risk of his act and was guilty of negligence proximately causing the explosion and his injury and damage.

This résumé of the pleadings has application to both causes of action, the first of which is for damage to plaintiff for his injuries. The second is for medical and hospital expense for which the father was liable and which was assigned to plaintiff.

There are eight assignments of error by which it is urged that the judgment may not be allowed to stand. One of these relates to the question of whether or not on the record Edrie Evans was a party to the oral contract of employment.

On the record and the decisions of this court the only conclusion which may be arrived at is that the assignment is valid and must be sustained. There is no evidence whatever in the record which directly or by reasonable inference proves a partnership or anything in the true nature of a joint adventure between the two defendants or that Edrie was a party to the oral employment agreement.

As to the employment agreement all she did was to accompany the plaintiff to the field where plaintiff and Lloyd entered into it.

As to the existence of a partnership this court has said: "Partnership is a contract of two or more competent persons to place their money, effects, labor, skill, or some or all of them, in lawful commerce or business, and to divide the profit or bear the loss in certain proportions." Peterson v. Massey, 155 Neb. 829, 53 N. W. 2d 912.

In the same case, as to joint adventure, it was said: "A joint adventure is in the nature of a partnership, but may exist where persons embark on an undertaking without entering on the prosecution of a business as partners strictly but engage in a common enterprise for their mutual benefit."

Again in the same case as to the creation of a joint adventure, it was said: "To constitute joint adventure, there must be an agreement to enter into an undertaking in the objects of which the parties have a community of interest and common purpose in performance, and each of the parties must have equal voice in the manner of its performance and control over the agencies used therein, though one party may entrust performance to another."

In that case, as to proof of the existence of either a partnership or of a joint adventure, it was said: "The burden of establishing the existence of either a joint enterprise or a partnership is upon the party asserting that the relationship exists."

The total substance of the evidence relating to partnership or joint adventure is that Lloyd was engaged in farming partly on land owned by him, partly on land held in joint tenancy with Edrie, and partly on rented land; that they had a joint bank account; and that they talked over the matters relating to the farming operations. There is no word of evidence supporting the existence of any kind or character of contractual arrangement.

By the first, second, and eighth assignments of error it is urged for reasons made apparent by the record that on the evidence and the law there was no basis for a recovery by plaintiff.

Separate motions for directed verdict were made by the defendants at the close of plaintiff's evidence and again at the close of all the evidence. Separate motions for new trial and for judgment notwithstanding the verdict were also made. These motions challenged the

sufficiency of the evidence to sustain a verdict in favor of plaintiff. All of these were overruled. The defendants effectually by these three assignments of error contend that they should have been sustained, and in consequence thereof they are entitled to a reversal of the judgment with direction to the district court to render judgment in their favor.

In the determination of this question this court is required to consider the evidence in the light most favorable to the plaintiff and to resolve every controverted fact in his favor, and he should have the benefit of every inference that can reasonably be deduced therefrom. Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367.

At the close of plaintiff's evidence no testimony had been adduced to describe the contents of the container, which was a 5-gallon can used for the purpose of conveying and pouring tractor fuel into a farm tractor, from which the plaintiff attempted to pour the fuel from which the explosion, about which there is no controversy, resulted. Likewise there was no evidence as to its volatility or its explosive potential when it came in contact with or proximity to fire or otherwise. The plaintiff however pleaded sufficient facts showing that it was highly volatile and dangerously explosive when brought into contact with or close proximity to fire.

The defendants substantially admitted by answer that the can contained tractor fuel having the qualities described by plaintiff in his petition. It must be said therefore that although there was no evidentiary proof that the fuel used as it was had the potential claimed for it by plaintiff the potential did, as claimed, exist.

The applicable rule in this instance is the following: "No proof is required as to the existence of a fact admitted by the pleadings." Faulhaber v. Griswold, 124 Neb. 357, 246 N. W. 727. See, also, Barkalow Bros. v. English, 159 Neb. 407, 67 N. W. 2d 336; Rodgers v. Jorgensen, 159 Neb. 485, 67 N. W. 2d 770.

The plaintiff testified that he proceeded to pour the

motor fuel by order and direction of Lloyd. This is denied by Lloyd and to the contrary he testified that he directed the plaintiff not to do so. Under the rules set out herein this court, for present purposes, must accept the version of the plaintiff.

A further substantial contention of the defendants is that even if Lloyd did direct the plaintiff to pour the fuel, still he may not recover for the reason that in doing so he was guilty of contributory negligence, and also that he assumed the risk of his own act. The basis of this contention as it has been stated by defendants in their brief is as follows: "It is presumed that an 18-year-old boy who has studied auto mechanics in school, owned, operated and repaired four automobiles, operated farm tractors, refueled farm tractors, and who had been employed in haying operations with mechanized equipment for three or more summers, must know and appreciate the dangers in the use of tractor fuel, gasoline and motor fuels generally, including their explosive character and the danger which would ensue from pouring them on a fire or exposing them to fire."

If the contention of defendants is to be sustained it must be sustained on the basis of this proposed presumption and contrary to the direct testimony of the plaintiff. He testified that he did not know of the dangers incident to such handling as he said was directed.

Attention has not been called to any case in this jurisdiction the effect of which is to employ a presumption such as is proposed to defeat the right of trial to a jury under conditions like or similar to those presented by the record in this case. In none of the cases to which attention has been directed has a declaration been found the effect of which is to say that a person who precipitates under direction of an employer dangers which are in their nature hidden, which dangers may not by the exercise of ordinary care be immediately recognized by the senses, although the dangers are inherent and

generally known and recognizable, is guilty of contributory negligence, or that he has assumed the risk of his act, in the absence of evidence that he knew or in the exercise of ordinary care should have known of the dangers.

It was said in a case where an infant of the age of 14 years was involved: "The servant can not fly in the face of the manifest and inevitable danger—danger that can not be avoided, even by the exercise of ordinary care and skill—even though he be commanded by his master to incur the risk; and if he does so he can not recover." Ittner Brick Co. v. Killian, 67 Neb. 589, 93 N. W. 951.

In the opinion in this case Shortel v. City of St. Joseph, 104 Mo. 114, 16 S. W. 397, 24 Am. S. R. 317, was referred to as supporting this statement. In that case it was said: "If, therefore, the master orders the servant into a place of danger, and the servant is injured, he is not guilty of contributory negligence, unless the danger was so glaring that a reasonably prudent person would not have entered into it." This statement discloses a purpose to say that liability or nonliability in an instance where an infant is ordered into a dangerous situation by his employer does not depend upon presumption but knowledge and prudent action in relation thereto by the employee. This is the attitude which has been manifested by the decisions of this court.

This court, in Norfolk Beet-Sugar Co. v. Hight, 56 Neb. 162, 76 N. W. 566, quoted with approval the following from Jones v. Florence Mining Co., 66 Wis. 268, 28 N. W. 207, 57 Am. R. 269: "We think it is now clearly settled that if a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, yet if the servant employed to do work of such a dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the

dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them, and do his work safely, with proper care on his part." There has been no departure in the decisions from this pronouncement.

Directly on the question of presumption as it relates to a minor this court, in Collins v. Weise, 110 Neb. 552, 194 N. W. 450, said: "There is no presumption that a boy 16 years of age, who has had little experience as a farm laborer, has as much prudence and understanding as an adult, and where such youth is injured while engaged in dangerous work, which he was ordered to do by his employer's foreman in charge of the work, it is for the jury to say, considering his age and experience, whether he assumed the risks of such employment." This pronouncement has not been modified by later decisions.

It is of course true that an employee who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is chargeable with negligence or contributory negligence. Groat v. Clausen, 139 Neb. 689, 298 N. W. 563; Ring v. Kruse, 158 Neb. 1, 62 N. W. 2d 279.

Also as said in Corley v. Hubbard, 129 Neb. 38, 260 N. W. 551: "An employee assumes risks not ordinarily incident to his employment, provided he knows of them and appreciates the danger, or provided they are so plainly observable that he must be presumed to know them and to appreciate the danger." See, also, Groat v. Clausen, *supra*.

Where however there is a disputed question of fact as to whether or not the employee was informed or had knowledge of the latent dangers of his employment a question is presented for determination by a jury.

Gundy v. Nye-Schneider-Fowler Co., 89 Neb. 599, 131 N. W. 964; Collins v. Weise, *supra*.

In the light of these observations it is concluded that the district court did not err in refusing to sustain the contentions embraced in the first two and the eighth assignments of error.

By the third assignment of error the defendants urge that the court erred in excluding testimony as to what knowledge is commonly possessed of the explosive properties of tractor fuel by persons of similar age to the plaintiff. A sufficient response to this is that it does not appear that any such offer of evidence was made. The only thing that appears in this connection is two questions asked of Ralph Fuqua, who was 22 years of age, by defendants' attorney and similar questions asked of one John Anderson. The questions asked of Fuqua were: "Q. You know enough not to pour gas on a fire, don't you?" "Q. Mr. Fuqua, do you know it is not safe to pour gasoline or tractor fuel on a fire?" The questions were objected to on the ground that they were not proper cross-examination and had no bearing on the issues. The objections were sustained.

By the fourth assignment of error it is contended that the court erred in admitting into evidence hospital records containing opinions of nurses as to pain and suffering of the patient. It is to be observed that by this assignment the admissibility of hospital records generally is not brought into question. It is directed only to admissibility of opinions of nurses as to pain and suffering of the patient contained in the hospital records. The discussion here will be so limited.

Voluminous hospital records from the Nebraska Methodist Hospital in Omaha, Nebraska, were admitted in evidence over objections of the defendants. Among these were notes purportedly made by nurses. Approximately ten pages from these notes covering a period from August 7, 1953, to August 18, 1953, were

read to the jury. Apparently there was much more of this character of evidence which the jury was probably permitted to take to the jury room.

The only foundation for the receipt of these notes in evidence was laid by the then assistant medical record librarian of the hospital. She testified that they were the normal, regular business records maintained by the hospital concerning plaintiff; that after proper service to the patient they were assembled in the record office; that her office only assembled the records; that they are compiled on the floors and do not come to the record office until the patient is dismissed; and that they were kept in the ordinary course of business. There is nothing whatever in the testimony of the witness to identify the person or persons who made the notes or to verify their authenticity.

As to admissibility this court has said: "The official charts and records, kept in the regular course of business under the rules of a reputable hospital, are admissible in evidence when a proper foundation has been laid." Willis v. Order of Railroad Telegraphers, 139 Neb. 46, 296 N. W. 443.

In that case there was no holding that statements of the condition of a patient appearing on hospital charts were not hearsay. The point of the holding in that connection was that the plaintiff, the widow of a deceased person, had in her proof of death in a claim for insurance waived the right to assert inadmissibility on the ground of hearsay.

The admissibility generally of hospital records, in the absence of statutes, is commented upon in the opinion. In the comments it was pointed out that there is great conflict of opinion in other jurisdictions as to admissibility of hospital records in evidence. However no precedent was announced therein for this jurisdiction. It was indicated only that they were not admissible without foundation.

In other jurisdictions the question of foundation has

been considered and views expressed. In the expressions there is no uniformity of language but a summary of the substance appears to be that before hospital records become admissible at least the following must be shown: The custody from which they come; that they were prepared in due process of hospital work; the identity of the person who made them; the manner in which the person or persons making them obtained the information recorded; information as to accuracy; identification of the records by the person or persons who made them; and if such person or persons are unavailable, the reasons therefor. See, Osborne v. Grand Trunk Ry. Co., 87 Vt. 104, 88 A. 512, Ann. Cas. 1916C 74; Clayton v. Metropolitan Life Ins. Co., 96 Utah 331, 85 P. 2d 819, 120 A. L. R. 1117.

This appears to be a proper general rule to be observed in situations such as the one being considered here. The record in this case discloses no such foundation.

The plaintiff contends however that these notes were admissible under a statute which is designated as the Uniform Business Records As Evidence Act. Section 25-12,109, R. R. S. 1943, is as follows: "A record of an act, condition, or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies as to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission." It is on this provision that the plaintiff relies.

It is apparent, assuming that the notes in question could be regarded as business records, that the foundation for admission in evidence required by the terms of the statute was never laid. As to this no further comment is required.

In the light of what has been said as to the purpose and meaning of the statute these notes were not business

records. In Higgins v. Loup River Public Power Dist., 159 Neb. 549, 68 N. W. 2d 170, it was pointed out that the record of the acts and incidents of employees in the performance of duties as such do not come within the purview of this statute. In that case it was said: "The phrase regular course of business as used in the act must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as such. If a record is not of such a character as to give it the status of a business entry it is hearsay and is inadmissible."

The record of these notes was not admissible. The admission of them was error as contended by the defendants.

By the fifth assignment of error the defendants contend that the court erred in admitting into evidence photographs showing the physical appearance of plaintiff after the accident. These photographs were in color. The substantial theory of the assignment is not that the photographs did not reflect the appearance of the plaintiff at the time, but that there was other descriptive evidence of his condition and appearance which rendered unnecessary this evidence, and in this light the evidence should not have been admitted because it was calculated only to create prejudice against the defendants.

In the light of the decisions the assignment of error may not be sustained. In City of Geneva v. Burnett, 65 Neb. 464, 91 N. W. 275, 101 Am. S. R. 628, 58 L. R. A. 287, it was said: "Under the proper precautions and with necessary explanations, what are known as 'X-ray pictures' are admissible in evidence for the purpose of showing the condition of the internal tissues of the body." This pronouncement was referred to with approval in Fries v. Goldsby, 163 Neb. 424, 80 N. W. 2d 171.

If this is true as to internal tissues it would reasonably appear that photographs showing the condition of the external tissues should likewise be admissible. The possibility that the photographs might have a tendency

to create sympathy in favor of one party should not render them inadmissible as proof of an issue on the trial.

The sixth assignment of error requires no consideration at this point. It was effectually disposed of by the conclusion already appearing herein that no cause of action has been proved against Edrie.

By the seventh assignment of error the defendants contend that the court in effect orally gave instruction to the jury and that this was error.

The court did out of the presence of the parties or their attorneys orally instruct the jury as to the manner of preparing a verdict, as to the intent of the court as to the content of a form of a verdict in blank supplied, and the effect of it with the blank or blanks filled out and returned by the jury. This obviously was reversible error.

Section 25-1111, R. R. S. 1943, provides: "It shall be the duty of the judges of the several district courts, in all cases, both civil and criminal, to reduce their charges or instructions to the jury to writing, before giving the same to the jury, unless the so giving of the same is waived by the counsel in the case in open court, and so entered in the record of said case; * * *."

Section 25-1115, R. R. S. 1943, provides: "No oral explanation of any instruction authorized by the preceding sections shall, in any case, be allowed, and any instruction or charge, or any portion of a charge or instructions, given to the jury by the court and not reduced to writing, as aforesaid, or a neglect or refusal on the part of the court to perform any duty enjoined by the preceding sections, shall be error in the trial of the case, and sufficient cause for the reversal of the judgment rendered therein."

In Dow v. Legg, 120 Neb. 271, 231 N. W. 747, 74 A. L. R. 5, it was said: "The giving of an oral instruction to the jury in regard to the principles of law applicable to the case and to the evidence, without waiver of the

statutory requirement that it be in writing, is reversible error."

In the light of these observations the judgment of the district court is reversed. As to the defendant Edrie Evans the cause is remanded with directions to sustain her motion for judgment notwithstanding the verdict. As to the defendant Lloyd L. Evans, it is remanded for a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.