DWAYNE D. ANDERSON, APPELLEE, v. LLOYD L. EVANS, APPELLANT.

96 N. W. 2d 44

Filed April 10, 1959. No. 34491.

*Max Kier, Charles Ledwith,* and *William W. Griffin,* for appellant.

*Louis A. Seminara* and *Julius D. Cronin,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought in the district court for Holt County by Dwayne D. Anderson, plaintiff, against Lloyd L. Evans, defendant, to recover damages

for injuries sustained by the plaintiff when he was a minor 18 years of age arising out of an accident which occurred when he was employed by the defendant as a farm hand and was severely burned. The second cause of action includes amounts incurred for hospital and medical expenses by plaintiff's father, assigned to the plaintiff. The plaintiff had attained his majority prior to the time of this trial. The case was tried to a jury resulting in a verdict in favor of the plaintiff, fixing the amount of his recovery in the sum of $8,000.

This is the second appearance of this case in this court. See Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59.

At the conclusion of the plaintiff's evidence and at the conclusion of all of the evidence, the defendant moved for directed verdict, both of which motions were overruled. The defendant filed a motion for judgment notwithstanding the verdict or for a new trial, which was overruled. From such rulings the defendant perfected appeal to this court.

The second amended petition of the plaintiff, insofar as necessary to consider here, alleged that an accident occurred in the process of removing a broken wooden stake from the body of a pick-up truck by means of pouring fuel onto the stake and igniting it, when the plaintiff, not knowing the explosive properties of liquid fuel and acting on the command of the defendant, picked up a can of tractor fuel to pour on the burning stake. The can exploded and seriously burned the plaintiff.

It is further alleged that the negligence, carelessness, and omissions of the defendant were the direct and proximate cause of the plaintiff's injuries. The specific acts of negligence charged to the defendant are as follows: (1) In failing to provide a safe place for the plaintiff to work; (2) in failing to inform the plaintiff of the perils and dangers incident to his employment and to instruct the plaintiff how to avoid them; (3) in failing to advise and inform the plaintiff of the contents of the can which

the defendant negligently and carelessly instructed the plaintiff to pour onto the stake ignited by the defendant; (4) in commanding and directing the plaintiff to pour fuel on said burning stake, which act was a dangerous undertaking, and the hazard and danger were well known to the defendant who was a mature and experienced rancher, but which hazard and danger were not known to the plaintiff due to his youth and inexperience; (5) in failing to provide the plaintiff the proper and necessary safeguards prior to directing and commanding the plaintiff to pour said tractor fuel on the stake to be removed; and (6) in directing, commanding, and instructing the plaintiff to use the highly explosive and inflammable fuel as a means to burn the stake, when the defendant knew, or should have known, that such a method of removing said stake was the most dangerous method to the plaintiff.

The second amended petition then alleged the injuries accruing to the plaintiff by virtue of the defendant's negligence, and the nature and effect of such injuries.

The second cause of action relates to the medical expenses incurred, all of which are set out in the petition, and the assignment of the same by the plaintiff's father to the plaintiff due to the fact that the plaintiff became of age prior to the time of this trial.

The defendant's answer to the second amended petition alleged that the specific acts of negligence charged to the plaintiff were as follows: Needlessly exposing himself to the danger of fire and the danger of explosion; voluntarily assuming an unnecessary risk of fire and explosion; failing to protect himself from the possibility of fire or explosion; failing to observe that the stake, which had in his presence been partially burned, was still on fire; failing to observe that there remained in said partially burned stake a live spark; holding said can of tractor fuel in such a position as to permit a combustible gaseous mixture of its vaporized contents and air to be exposed in the presence of a spark

or flame; and failing to obey the orders of his master to desist from lifting the can of tractor fuel into a position where fire or explosion would be likely to occur.

The defendant assigns as error the following: The court erred in not sustaining the defendant's motions for a directed verdict and motion for judgment notwithstanding the verdict. The court erred in excluding tendered testimony as to what knowledge of explosive properties of tractor fuel is commonly possessed by other persons of similar age and experience as the plaintiff. The court erred in admitting in evidence a newspaper article telling of the plaintiff's accident. The court erred in receiving in evidence the testimony of a witness given at a former trial without a proper foundation being laid. The court erred in giving instructions Nos. 2 and 13. The court erred in failing to permit defendant to amend his answer to plaintiff's second amended petition to conform to the proof, namely, that the medical expenses on which plaintiff sought recovery were outlawed. The court erred in giving the jury an oral explanation of an instruction.

"In determining the question of whether or not a motion of a defendant for a directed verdict or for judgment notwithstanding the verdict should be sustained the court is required to consider the evidence in the light most favorable to the plaintiff and to resolve every controverted fact in his favor, and he should have the benefit of every inference that can reasonably be deduced therefrom." Anderson v. Evans, *supra.*

"In a case where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury." Dryer v. Malm, 163 Neb. 72, 77 N. W. 2d 804.

We will refer to Dwayne D. Anderson as Dwayne, or

plaintiff; to Lloyd L. Evans as Evans or defendant; and to Ralph Fuqua as Fuqua.

The record discloses that the plaintiff, at the time of this trial, was 23 years of age; that he went to Atkinson with Fuqua in Fuqua's car on August 5, 1953; and that upon arriving at Atkinson the plaintiff visited some relatives and was informed that the defendant was looking for help. The plaintiff and Fuqua proceeded to the defendant's farm where they met Mrs. Evans. She went with them to the hayfield where the defendant was working, and introduced them to the defendant. These young men talked to the defendant about employment. He said he needed help, and inquired about their experience. The plaintiff told the defendant he had had some experience when he worked with his uncles in hayfields for three or four summers. The defendant then discussed the type of equipment he used and showed them how he had it set up and how it operated, which was different than the plaintiff had been accustomed to. The defendant said he would pay $5 a day and give them room and board. The plaintiff was to go to the field with the defendant the next day and Fuqua was to remain in the farmyard and sharpen sickles.

On August 6, 1953, the plaintiff was returning to the defendant's pick-up truck with a canteen of water and at that time saw the defendant with a 5-gallon can in each hand. The plaintiff put the canteen in the front part of the pick-up truck, and the defendant put the cans in the back of the same. The plaintiff and defendant got into the truck and proceeded to the field to start haying operations. While the plaintiff was in the process of greasing the trail mower and rake and repairing some equipment, the defendant was servicing and fueling the tractor, using one of the cans which he had placed in the truck. After finishing such work they started the haying operation. During the process of such operation the sickle on the trail mower broke, requiring them to

quit the haying operation. The defendant then told the plaintiff about a broken stake on the box at the rear of the truck which he wanted to replace with a new one. In an attempt to remove the broken part of the stake that was stuck in the socket, the defendant used a hammer and chisel, also a brace and bit to drill into it, and tried to pull it out with pliers. The plaintiff handed the defendant the tools to be used in such operation. After that they returned to the farmyard and parked the truck. The defendant directed the plaintiff to remove the bolts off the top half of the stake, which the plaintiff started to do. The defendant picked up a can from the back of the truck and soaked the bottom half of the stake with the contents of the can. The defendant then left and returned with two sickles, placing them in the back of the truck. The plaintiff was removing the bolts as directed, but was unable to remove them all and the defendant assisted the plaintiff in removing the remainder of the bolts. The defendant lit the stake he had soaked, and there was a flame. They stepped back and watched it burn for a couple of minutes. The flame died down and the defendant looked at the plaintiff and said: "Dwayne, pour some more fuel on the fire." The can was to the left of the plaintiff and the defendant was to his right. The plaintiff reached down and picked up the can with his left hand and there was an explosion before he had an opportunity to pour any of the contents out of the can. The plaintiff had the can just about waist high when the explosion occurred in front of him. The explosion knocked him off his feet, moving him back away from the truck. He saw fire in front of him, and his clothing was set on fire. After the explosion the plaintiff took three or four steps then laid down on the ground and started to roll. Fuqua removed the plaintiff's clothes, as he was the first one to reach him. The plaintiff was wearing bibless overalls, a T shirt, and engineer's boots. After that the plaintiff got up and walked to Fuqua's car and put on another pair of

overalls. Fuqua wrapped a blanket about him. The plaintiff asked the defendant to get him to a doctor and the defendant said he would.

The defendant said nothing about the tractor fuel being dangerous or that it would possibly explode, nor that the contents of the can might explode. Neither did he put his hand on the plaintiff in any way. The plaintiff testified that he did not know what was in the can.

After the explosion the defendant took the plaintiff to the hospital in Atkinson in the defendant's car. Fuqua went along. The defendant drove and Fuqua and the plaintiff rode in the rear seat. The plaintiff testified that he had no conversation with the defendant on the way to the hospital, but that the defendant looked at him and said: "Dwayne, I should have never told you to do it." The defendant offered the plaintiff a cigarette, which he did not accept. The defendant shook his head and repeated: "Dwayne, I should never have told you to do it."

In Atkinson, they first stopped at a doctor's office and then proceeded to the hospital. The plaintiff walked into the hospital with the defendant and Fuqua beside him. The plaintiff was taken to the operating room and put on a table where his clothes were removed and preparations were made to bandage him. Fuqua was there, trying to hold the plaintiff on the table. Present in the operating room were the defendant, Fuqua, two sisters who were registered nurses, the doctor, and the plaintiff. The next thing the plaintiff remembered he was in a hospital bed in another room.

He further testified that he did not discuss the accident with anyone while he was in the hospital; that the same evening his parents and brother arrived from Omaha; that he had no conversation with them; and that he was taken to Omaha that night in an ambulance and hospitalized at the Nebraska Methodist Hospital for 2 months, 3 weeks, and 4 days.

The plaintiff further testified to the employment he

had obtained when he was able to return to work, about a year after the accident, and the difficulty he experienced in certain types of employment. He testified that at the time of trial he was working as a can placer for the Continental Can Company, earning $2.07 an hour; and that he was married and had one child.

On cross-examination the plaintiff testified that he was graduated from South High School in 1953; that he was taught different types of engines and the construction of same, and also what made an internal combustion engine operate; and he explained this process. He further testified that he had a course in mechanics for two semesters; that he did not learn that gas was explosive; that he had owned two cars and also two cars were owned by him and his brother; that he had done mechanical work on these cars such as adjusting the brakes, working on doors and windows, tightening fan belts, and working on the electric system; that he worked for his step-uncle in the hayfields three summers before this accident occurred; that he helped stack and put up hay, operated and refueled tractors, using tractor fuel, and knew it had to be handled with care because it would ignite and burn; that it was never explained to him that tractor fuel had to be handled in a certain way; and that before the accident he knew that fuel oil was flammable and used to operate tractors.

He further testified that when the defendant lit the stake, setting the fire, the defendant told him to pour more fuel on the fire and the plaintiff figured it was tractor fuel; that when he picked up the can he was going to follow the defendant's instructions to pour some more fuel on the fire; that no fuel oil was poured from the can; and that he did not know what was in the can. Prior to the accident he knew that fuel oil would burn, but did not know that it would explode. The can that exploded was the same can the defendant used when he poured fuel on the stake while in the farmyard.

The plaintiff's mother testified that she went to At-

kinson with her husband and her oldest son John, arriving at about 9 p. m., the day of the accident. She further testified that the defendant told her at a cafe in Atkinson that he "shouldn't have told him (Dwayne) to do it."

The plaintiff's brother testified that at the breakfast table at the defendant's ranch the morning after the accident the defendant said he was sorry he told Dwayne to do it and that he did not understand why he told Dwayne to pour the fuel on that stake.

The plaintiff offered the testimony of Fuqua given at the first trial. For the purpose of this trial, this testimony may be summarized as follows: After returning from the hayfield and parking the truck, the defendant came to this witness and said he and the plaintiff were trying to get a stake butt out of the back of the truck with tractor fuel. After talking to this witness, the defendant went back to the truck. The Evans children were in the yard and the defendant told them to get back to the house before they got hurt. The next thing this witness saw was a big flash. At that time the plaintiff was about 5 feet from the rear of the truck. The plaintiff flew back about 10 feet, and his clothing was on fire. When this witness saw the flame he called to the plaintiff to lie down and roll, and started chasing him. This witness caught up with the plaintiff and ripped off his clothing. This witness further testified that he got the plaintiff up to his car and tossed a blanket around him; and that the defendant got his car and drove this witness and the plaintiff to the hospital in Atkinson. The defendant said to this witness: "I shouldn't have told him to do it; its all my fault." This conversation occurred on the way to the hospital, and was repeated three or four times. Arriving at the hospital, they went to the operating room. This witness testified that he helped the doctor and the sisters bandage the plaintiff; that he stood to the right of the plaintiff; and that he was there all of the time. Afterwards the defendant

and this witness went to town and then back to the defendant's farm. The defendant talked to this witness about the accident, and this witness remembered him saying: "I shouldn't have told him to do it; its all my fault." He repeated this several times.

Sister Mary Antonita testified in behalf of the defendant that she was superintendent of the Atkinson hospital and saw the plaintiff first when he was brought to the hospital and taken to the operating room. She further testified that the plaintiff said: "He told me not to do it; why I did it I don't know." This statement was made before the hypodermic injection was administered. This witness also testified that Fuqua was not in the operating room, except for an instant.

Sister Mary Felicia testified that she was a registered nurse; that when the plaintiff was returned to his room and during the time she was there with him alone, between 5 and 6:30 p.m., she asked the plaintiff to tell her just what happened, and testified: "He says, I was going to burn some kind of stalk or spoke or something, and he says, I would have to put gas or something on it, and Mr. Evans told him, don't do it; and then he says, Sister, why I did it I don't know."

The owner of the ambulance used to transport the plaintiff to Omaha testified that he asked the plaintiff what happened and the plaintiff told him a can of tractor fuel exploded as he was putting it on the stake that they were burning out of a pick-up truck; and that the plaintiff said he should have known better.

The defendant testified that he had been engaged in farming and ranching for the past 20 years; that he was married and had two children, Ruth 14 and Gary 10; and that he was 51 years of age. He further testified to the employment of the plaintiff and Fuqua. The defendant further testified that he was using a half-ton 1949 model Chevrolet pick-up truck with a steel cab and steel box behind the cab upon which were a grain box and stock rack. He described the manner in

which the stakes were placed on the stock rack. One of the stakes was broken off and required replacement. He testified as to how he and the plaintiff endeavored to remove the pieces of wood contained in the socket where the stake had broken off with a hammer and chisel, and with a brace and bit. He further testified that the plaintiff suggested to him that they could soak the socket containing the broken stake with tractor fuel and burn it out, to which the defendant said that would be all right, but it could not be done in the hayfield. The plaintiff poured some tractor fuel on the stake, but it was not ignited in the hayfield. The plaintiff placed the caps on the can. The defendant further testified that he and the plaintiff returned to the farmyard and parked the pick-up truck. He then asked plaintiff to remove the bolts that held the angle iron to the grain box at the right rear corner of the grain box, which he did. The plaintiff then ignited the soaked stake in the socket. The defendant was preparing to make a new stake to replace the one which they were endeavoring to remove. At that time he was standing at the back of the truck putting a bit into a brace. As he was doing that, he observed the flame in the socket had died down. The plaintiff said: "That fire is not burning very good, I believe I will put some more fuel on it." The plaintiff, as he said that, stepped onto the rear bumper of the pick-up truck and grabbed the can containing the tractor fuel. As he stepped back to the ground, the defendant held his left hand against the plaintiff's body and said: "No, Dwayne, don't do that, that would be dangerous to put that fuel on that fire." The plaintiff merely stood there at that time holding the can, and the defendant told him to put the can down and wait until he returned. The defendant further testified that he told the plaintiff he would go down by the windmill and get a small open can. The plaintiff then set the can down. The defendant laid the brace and bit in the back end of the truck and started to walk away in an

easterly direction, believing that the plaintiff would follow his instructions. After he had walked approximately 18 feet he heard the plaintiff say: "I am going to be awful careful here." The defendant turned around and saw the plaintiff standing in a position to pour fuel on the burning stake, holding the can up in his hands in a position to do so. There was a flash and an explosion which momentarily stunned the defendant. The defendant then heard the plaintiff yell: "Get me out of here." The defendant ran toward the plaintiff who turned and ran in a northerly direction, then lay down on the ground and rolled 35 feet before the defendant overtook him. With the help of Fuqua, the defendant proceeded to remove the burning clothing from the plaintiff's body. The defendant directed Fuqua to take care of the plaintiff. The defendant put out the fire on the pick-up truck with a pail of water which was brought to him by his wife.

On cross-examination the defendant testified that there was some question in his mind at the time he first talked to the plaintiff about the plaintiff's competency to operate the farm machinery which the defendant used, but he believed with a little help the plaintiff could learn to do the work assigned to him well enough, and with a little orientation the plaintiff would be able to operate the tractor. The defendant further testified that he had no objection to the plaintiff pouring tractor fuel on the stake out in the field, but that they did not burn it there. The defendant admitted that at the previous trial of this cause he testified that he did not believe it was dangerous to light the stake that was soaked with tractor fuel. He also testified that he did not tell the plaintiff not to light the stake after they arrived back in the farm yard. The defendant further testified that an explosion is no more easily brought about with tractor fuel than it is with gas; that tractor fuel is more liable to explode in a condition in which the can is partly filled than when it is full; and that this

particular can used to burn out the stake was partly full, and the defendant knew it. The defendant denied conversations as testified to by the plaintiff's witnesses to the effect that he directed the plaintiff to pour more tractor fuel on the stake. Likewise, his wife denied any conversation that took place at the breakfast table the morning after the accident, as testified to by the plaintiff's witness.

This court, in Anderson v. Evans, *supra*, cited Ittner Brick Co. v. Killian, 67 Neb. 589, 93 N. W. 951, and particularly Collins v. Weise, 110 Neb. 552, 194 N. W. 450, wherein this court said: " 'There is no presumption that a boy 16 years of age, who has had little experience as a farm laborer, has as much prudence and understanding as an adult, and where such youth is injured while engaged in dangerous work, which he was ordered to do by his employer's foreman in charge of the work, it is for the jury to say, considering his age and experience, whether he assumed the risks of such employment.' "

Where there is a disputed question of fact as to whether or not an employee was informed or had knowledge of latent dangers of his employment, a question is presented for determination by a jury. Anderson v. Evans, *supra*.

We conclude that the trial court did not err in refusing to sustain the motion for directed verdict made by the defendant, and did not err in overruling the motion for judgment notwithstanding the verdict made by the defendant.

The defendant contends that the trial court erred in receiving the testimony of Fuqua, a witness at the former trial but who was not present at the trial of the instant case. Objection was made to the receiving of this testimony for the reason that at the former trial the defendant was deprived of his right of cross-examination. The evidence shows that after the former trial Fuqua left the city of Omaha and went to St. Joseph, Missouri,

and was in the process of moving to a job in the State of Wisconsin. The evidence also discloses that the plaintiff made a reasonable and diligent effort to find and locate this witness in the State of Wisconsin to testify at the instant trial, but was unable to do so. At the former trial the plaintiff on re-direct examination offered in evidence a statement, exhibit D, to which the defendant objected. The court took the matter of the admissibility of this statement under advisement. The trial court was understood to have excused the witness due to inclement weather. On the following day the court allowed the admission of the statement. Defense counsel requested that Fuqua be recalled for the purpose of cross-examination concerning this statement. Due to Fuqua's departure counsel was unable to cross-examine him. The plaintiff at this trial did not offer the re-direct examination of Fuqua given at the first trial, and did not re-offer the statement, exhibit D, as an exhibit in the instant case.

In Wolski v. National Life & Accident Ins. Co., 135 Neb. 643, 283 N. W. 381, this court held: " 'Where a witness is shown to be absent from the state, his testimony given at a former trial of the same cause is admissible if otherwise unobjectionable.' "

We conclude that under the circumstances presented by the record the trial court did not commit prejudicial error in admitting the testimony of Fuqua.

The defendant contends that the trial court committed prejudicial error in giving instruction No. 2 to the effect that as a result of the accident the plaintiff "will be unable to work for the remainder of his lifetime"; that this allegation contained in the plaintiff's second amended petition and read to the jury by the court was not supported by the evidence; that the evidence shows that the plaintiff had been employed for 3 years; and that during the last year preceding the second trial he had not missed a day of work, worked a 40-hour week, and earned $16 a day.

The evidence discloses no attempt on the part of the plaintiff to conceal the fact of his employment. He frankly testified to the nature of his employment before and after the accident and what he earned.

In Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597, this court said: "This court has frequently criticized the practice of copying the pleadings as a method of stating the issues to a jury and where they contain allegations not supported by evidence it may be reversible error to include such allegations in defining the issues if the reviewing court is satisfied that the jury may have been misled thereby."

We conclude that the jury was in no way misled by the instruction complained of.

The defendant contends that the trial court erred in giving an oral explanation of an instruction to the jury. The defendant asserts that in the instant case the jury apparently inquired of the court what would "slight negligence" be considered, percentage wise. The record shows the following reply: "The Court: I have answered your question in writing. That is covered in Instruction Number 11. You can just refer to that; it is defined in there. You will just take that and go back to your jury room; that will comply with the law." Instruction No. 11 shows that the court defined "slight negligence." The defendant contends that the reference made by the court to instruction No. 11 did not answer the question of the jury; and that in order to cure the error the court took the paper on which the jury had written the question and wrote: "Please refer to Instruction No. 11." The defendant also contends that these proceedings took place in the absence of counsel for the defense.

In support of this contention the defendant cites Dow v. Legg, 120 Neb. 271, 231 N. W. 747, 74 A. L. R. 5, wherein the court held: "The giving of an oral instruction to the jury in regard to the principles of law applicable to the case and to the evidence, without a waiver

of the statutory requirement that it be in writing, is reversible error." 

We are in accord with the statement made in Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627, that communications between the trial judge and the jury after retirement of the jury should be controlled by a high degree of circumspection. However, the oral communication alleged by the defendant to have been given to the jury in the instant case was merely a repetition or affirmation of an instruction already given to the jury.

In Commonwealth v. Kelly, 292 Pa. 418, 141 A. 246, it is said: " '* * * If there were any contradiction or uncertainty as to the instruction, there should, of course, be a new trial, but (to hold it to be reversible error) for the judge to repeat to the jury, either by recalling them or in a note in answer to their inquiry, a part of the instruction already given them, even though the defendants and their counsel were not present, seems to us to be super-technical, and not in harmony with the tendency of our courts to have cases retried only where there has been material error made in the trial of the case.' "

In the case of Oklahoma City v. Collins-Dietz-Morris Co., 183 Okl. 264, 79 P. 2d 791, the jury was returned into open court and asked the court the following question after reading instruction No. 8, which concerned the measure of damages: "We want to know if we would be permitted to fix the amount of the damage, if any, at any figure we see fit, or are we restricted to the figures set up in the petition." The court replied, in substance, that the law as to the measure of damages was set forth in instruction No. 8, that the petition was not evidence, and that the jury was to fix the amount of damages, if any, in accordance with the evidence and instructions of the court, and further advised the jury that in making these remarks the court did not intend to intimate either what the verdict should be nor the

amount of damages. The court said: "While this was technically an error on the part of the trial court and one to be carefully guarded against, yet, after a careful examination of the entire record, it does not appear that it resulted in a miscarriage of justice or constituted a substantial violation of the defendant's constitutional or statutory rights. The court did not give any new instructions, but in substance merely directed the attention of the jury to instructions previously given."

We conclude that the communication of the court to the jury should not be considered as an oral instruction contemplated by the statutes of this state sufficient to constitute reversible error. We observe nothing in this situation which could have prejudiced either party.

The defendant contends that the trial court erred in receiving and refusing to receive certain evidence. The defendant in this connection asserts that at the former trial the plaintiff had testified that he had never made any claim to the effect that the defendant had told him to pour oil on the burning stake to anyone until after he had talked to his attorney. On re-direct examination the plaintiff was permitted to identify a newspaper article appearing in an Omaha newspaper under date of September 9, 1953, to which there was an objection. The objection was overruled. The court received the newspaper article in evidence. The defendant contends that this ruling was damaging because of the statement previously made by the plaintiff which is sought to be refuted by the newspaper article; that this newspaper article was hearsay; and that there was no proper foundation laid for the admissibility of the same in evidence and no opportunity for cross-examination.

The record discloses that the first time the plaintiff discussed the case with his attorney was October 8, 1953. On the first trial of this cause, the plaintiff testified that to the best of his recollection the first time he had told anyone concerning how the accident happened was at the time he discussed the matter with his attorney. On

the trial of the instant case, on cross-examination the plaintiff recalled that the first time he had discussed how the accident happened was when he was interviewed by a newspaper reporter from an Omaha newspaper on September 9, 1953. At this point defense counsel endeavored to impeach the declaration of the plaintiff by showing him his testimony given at the prior trial wherein the plaintiff stated that as far as he remembered he had not made any statement concerning how the accident happened to anyone until he gave a statement to his attorney. Thereupon, upon re-direct examination, the plaintiff introduced into evidence a newspaper article dated September 9, 1953, which appeared in an Omaha newspaper and supported and corroborated the plaintiff's declaration at this trial that he told the story of how the accident happened approximately a month prior to the time he employed counsel.

The plaintiff contends that the trial court, in the exercise of its sound discretion, properly allowed the introduction of the newspaper article, not for the purpose of proving or disproving any of the issues or facts contained therein, but for the purpose of showing that the witness had given prior statements consistent with his testimony, particularly where he has been impeached by proof of other inconsistent statements.

In 58 Am. Jur., Witnesses, § 818, p. 457, it is stated: "The trial judge should be allowed a reasonable discretion in receiving or rejecting evidence of prior declarations of a witness consistent with his testimony where he has been impeached by proof of other inconsistent statements, and the appellate court should be loath to disregard an exercise of such discretion except in a clear case of abuse."

Considerable latitude must necessarily be allowed in the admission of corroborative evidence; and whether such testimony should be received rests largely in the discretion of the trial court. See, 98 C. J. S., Witnesses,

§ 648, p. 669; Heusser v. McAtee, 151 Neb. 828, 39 N. W. 2d 802.

We conclude that the defendant's assignment of error is without merit.

The defendant contends that the trial court committed prejudicial error in refusing the request of the defendant to amend his answer or in failing to strike the second cause of action on motion of the defendant for the reason that the second cause of action was barred by the statute of limitations.

In the second cause of action the plaintiff sought recovery, as assignee of his father, on account of hospital, doctor, and nurse bills incurred by the father in the sum of $3,513.35.

In Gurske v. Strate, 165 Neb. 882, 87 N. W. 2d 703, it was held: "The defense of the statute of limitations is a personal privilege of the debtor, and can be raised only by such debtor and those in privity with him." See, also, Neill v. Burke, 81 Neb. 125, 115 N. W. 321.

In the instant case it was stipulated that the substitution of Dwayne D. Anderson as sole party plaintiff was without prejudice to the rights of any parties to this action.

We conclude that the rule in Gurske v. Strate, *supra*, applies, and that the defendant's contention is without merit.

Instruction No. 13 relating to the measure of damages has been examined and is held not to be prejudicially erroneous as it relates to this assignment of error.

The defendant offered the testimony of certain witnesses aged 27, 18, and 16, to prove their knowledge of the use of tractor fuel and the danger connected with its use. These witnesses had each had considerable experience in working on farms and in the use of farm machinery and tractor fuel. Objections were made to this testimony for the reason that there was no proper foundation laid, which objections were sustained. An examination of the testimony of these witnesses shows

that the experience of these witnesses and that of the plaintiff, with reference to the matters to which they did testify relating to tractor fuel and its use, are in no respect similar, but quite dissimilar.

The plaintiff at all times denied that he knew the contents of the can that exploded and did not have knowledge of this fact until some time later, and the questions asked by defense counsel of the witnesses heretofore mentioned assumed that the plaintiff knew that the can contained tractor fuel.

It was the function of the jury to determine what the plaintiff knew or did not know with reference to the properties of tractor fuel at the time of the accident. See Anderson v. Evans, *supra*.

We conclude that the defendant's assignment of error is without merit.

In addition to the foregoing, it appears that in the instant case the charge by the official court reporter for the preparation of the bill of exceptions which comprises three volumes containing 534 pages and 98,986 words by actual count, was $310.

Section 24-342, R. S. Supp., 1957, provides in part: "It shall be the duty of such reporter to furnish on the application of the county attorney, or any party to a suit in which a stenographic report of the proceedings has been made, * * * a transcribed copy of the proceedings so recorded, or any part thereof. The reporter shall be entitled to receive in addition to his salary, a fee of fifteen cents per hundred words, to be paid by the party requesting the same; * * *." On the basis of this provision of the statutes, the proper charge for the bill of exceptions in the instant case is $148.50. The overcharge for the preparation of the bill of exceptions was $161.50. The cost of the preparation of the bill of exceptions in the instant case is hereby fixed at $148.50, and the district court is directed to retax the costs of the bill of exceptions in that amount. See Pueppka v. Iowa Mutual Ins. Co., on rehearing, 166 Neb. 203, 88 N. W. 2d 657.

.For the reasons herein given, the judgment of the district court is affirmed.

AFFIRMED.